**UNITED STATES ex rel. and for Use of TENNESSEE VALLEY AUTHORITY v. WELCH et al.**

**No. 3049.**

District Court, D. Tennessee, at Knoxville.

Sept. 7, 1940.

Charles J. McCarthy, of Knoxville, Tenn., for plaintiff.

S. E. Hodges, of Knoxville, Tenn., for defendant James A. Welch and others.

N. O. Hale, of Knoxville, Tenn., for Cordie Arnwine Suffridge and others.

TAYLOR, District Judge.

The pleadings in this matter present the question whether the conveyance made by Mrs. Cordie Arnwine Suffridge of her life estate in the involved premises and of Fred Arnwine and Mrs. Mattie Arnwine Long of their one-third interest each in said land be set aside as fraudulently procured, and that they be paid in addition to the amount they have already received by way of consideration such amount as represents fair and just compensation for their interests in the land, and that said just compensation be taken from that just compensation that would otherwise be payable to their grantee under the deed claimed by them to have been fraudulently procured.

The alleged fraud arises, if it exists, out of a presumption based upon inadequacy of consideration and a statement made by the purchaser that the land was of little worth. The purchaser would, in my opinion, based upon this record and upon other records involving lands owned by him and acquired by Tennessee Valley Authority, take anything he could get at the very lowest price possible and sell it at the very highest possible price, and that without any regard for the question whether the person or persons with whom he traded were his equal in experience and knowledge as to the subject matter of the trade. The purchaser is typical of many shrewd self-developed individuals who have traded themselves into more or less prosperous circumstances without too much regard for the rights of the other fellow.

It takes more than generalization, however, to set aside a deed. In the instant case, according to the holdings of the Tennessee courts, the inadequacy of

consideration must be such as to shock the conscience of the court before that alone will authorize the court to upset the transaction.

The deed was executed in 1930, and the grantors were familiar with the land, its location, its fertility, the state of the improvements, etc. They offered to sell it and were told that it had but little value. One sold a life estate; the other an undivided interest. There is no satisfactory evidence that either grantor was pressed into the trade. Of course the purchaser thought he was buying a bargain. The sellers were getting rid of an unproductive remotely situated piece of run down upland on which the taxes were due and some delinquent. Apparently from the record the owners would have sold it any time, as they did not live on it, all preferring to live in Knoxville where chances of employment appeared better. Welch did nothing in this case but buy property for less than its value.

To the sellers in the state of the confused lines the acreage was on a more or less basis, but it was apparently more than 25 acres. The survey of the Tennessee Valley Authority, the most accurate evidence before me, would seem to show it to be 45.3 acres. As to the minor, if the acreage as to the minor is before me, I find that the boundary includes 45.3 acres.

The decree under which Mrs. Suffridge acquired her interest in the land referred to a deed of A. T. Wolfenbarger dated March 18, 1913. The deed purported to convey 50 acres, or the whole Joseph Vance farm. On May 23, 1913, from this tract Mrs. Suffridge (Arnwine) and her then undivorced husband conveyed 10 acres to John Oscar Arnwine.

This works out pretty close to the 45.3 acres referred to as the Tennessee Valley Authority survey. Most of· these tracts run over rather than under.

The adults here waited too long, if in fact they ever had any basis for rescinding the deal, to do it now.

When a market was created four or five years after the transaction by the Tennessee Valley Authority, all the property in the Norris reservoir became very valuable. Some land that had theretofore yielded poorly became productive overnight. Welch had thrown the land in with other land he owned and just what he received for the precise land is not clear in the record. Just how much it advanced in price between 1930 and the date of. its acquisition by Tennessee Valley Authority is not clear.

I do not feel justified in interfering with the transaction on the record before me.